## Vowinckel *versus* Patterson.

1. A testator devised the rents and profits of a house and lot to his wife during her life, and at her death, to her heirs, with power to sell the lot should the house upon it be destroyed by fire during her life. *Held*, that under the operation of the rule in Shelley's case the wife took an estate in fee simple.

2. A testatrix had eight brothers and sisters. She devised certain real estate to six of them. *Held*, that by this provision of her will the course of descent was altered and that under the Act of April 13th, 1840, P. L., 320, the Orphans' Court had no jurisdiction in partition in relation to said real estate.

May 28th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Blair county*; Of July Term 1886, No. 79.

This was an amicable action of debt, wherein Calvin M. Patterson was plaintiff and Charles Vowinckel was defendant, in which the following case stated was filed by the parties.

And now, February 20th, 1886, it is hereby agreed by and between the parties, plaintiff and defendant above named, that the following case be stated for the opinion of the court in the nature of a special verdict.

That Isaac Thompson and Nancy Thompson, his wife, resided in Hollidaysburg, Blair county, Pennsylvania, previous to and in the year A. D. 1835.

Isaac Thompson owned considerable valuable real estate situated in Huntingdon county then (now Blair county), and in Juniata county, Pennsylvania.

He died on or about —— day of June, A. D. 1835, leaving a widow, Nancy Thompson, and no issue, testate; having made his last will and testament, dated April 29, A. D. 1835, admitted to probate in Huntingdon county.

By the provisions of said "will," among other matters therein contained, "devising" his estate to and among his nephews and others, is the following "devise" to his widow, Nancy Thompson, who survived him, to wit: "Also I direct that the small house on lot No. 31, on the corner of Allegheny and Montgomery streets, in the town of Hollidaysburg, now being built, shall be finished as soon as possible and that my wife Nancy shall have and enjoy the rents and profits of said lot, and all the buildings thereon erected during her natural life, and after her death the same shall go to her heirs absolutely; but if during the continuance of her life said buildings should be destroyed by fire, in that event she shall have full power to sell said lot and appropriate the proceeds to her own use."

That in pursuance of said "will" the "devisees" took possession of their respective purparts so devised.

Nancy Thompson, the widow, has used and enjoyed the possession and proceeds of the Hollidaysburg property from the death of her husband, Isaac Thompson, in the year A. D. 1835, until her death in A. D. 1850.

She died in Butler county, Pennsylvania, on the —— day of May, A. D. 1850, without issue, but leaving surviving her five (5) brothers, William, Robert, Joseph, David and Washington, and three (3) sisters, Sarah, Rebecca and Susannah.

She made her last will and testament, dated April 3d, 1850, which was duly admitted to probate in Butler county.

By the provisions of said will she bequeathed and devised the Hollidaysburg property, to wit: House and lot No. 31, aforesaid, in equal shares to her brothers and sisters, six (6) in number, after the payment of her debts, as follows: "I bequeath to my sisters, Rebecca Patterson, Sarah Patterson and Susannah Patterson, and to my three brothers, viz: Wil-

liam Patterson, Robert Patterson and Joseph Patterson, all my estate, and all my right and interest and claim to the estate of my deceased father, and all moneys, whether in notes, bonds or otherwise, and all personal or real property or estate belonging to me, in the settlement of my father's estate, and also my right to the bequest made me by the late William Thompson, deceased, all of which I will to be divided, an equal part to be given to each of the persons above named; the above includes my right to property in Hollidaysburg, and willed to me by my deceased husband."

Since her death in A. D. 1850, her brothers and sisters, "devisees," have enjoyed the possession, control, income, and rents unquestioned and undisturbed of the Hollidaysburg property, situated on the corner of Allegheny and Montgomery streets, as devised in the will of her husband, Isaac Thompson, deceased, to the present time.

Calvin M. Patterson, the plaintiff in this suit, is a son of David Patterson, deceased, a brother of the testatrix, and nephew of Susannah and Rebecca Patterson, deceased, two of the sisters and "devisees" of Nancy Thompson, deceased, and is the "devisee" of the interests of Susannah and Rebecca in said lot.

He, on the 15th day of June, A. D. 1885, presented his petition to the judges of the Orphans' Court of Blair county, reciting therein the above named property on the corner of Allegheny and Montgomery streets, in Hollidaysburg, as well as all the heirs and legal representatives of Nancy Thomson, deceased, and prayed for a writ of partition, which was granted, returnable to October term of court, A. D. 1885.

George Fay, high sheriff of Blair county, having given due and legal notice of the time and place of holding the inquisition, as required by law, by publication and otherwise, held the same on the 22d day of August, A. D. 1885. The inquest, appraising and valuing the premises at and for the sum of forty seven hundred and fifty dollars ($4,750.00).

October 5th, A. D. 1885, inquest was confirmed by the Orphans' Court of Blair county, and a rule granted on the heirs and legal representatives in interest to appear at January term, A. D. 1886, to accept or refuse the same, at the valuation and appraisement, or show cause why it should not be sold, &c.

After due and legal notice, by publication and otherwise, by the high sheriff of Blair county, as required by law, and the decree of the court, on the 18th day of January term, 1886, return day, Calvin M. Patterson, no others having appeared, came into court and filed an acceptance of the said property,

at the valuation and appraisement, with the usual order as to payment and recognizance.

January 19th, A. D. 1886, time extended to Argument Court for perfecting the recognizance.

January 20th, A. D. 1886, the plaintiff sold to the defendant the within named premises for the consideration of fifty-eight hundred dollars, the deed to be made on the payment of the purchase money, subject to examination and approval of the title by the attorney of the defendant, &c.

February 15th, A. D. 1886, the Orphans' Court modify their decree in order that the parties may prepare and submit a case stated involving the questions affecting the title, &c.

Now, should the court be of opinion that the will of Isaac Thompson vested the title to the lot in fee simple in his widow, Nancy Thompson, and that the will of Nancy Thompson vested the title to the lot in fee simple in Rebecca, Sarah, Susannah, William, Robert and Joseph Patterson, and their heirs, as tenants in common in equal proportions:

Or, if under and by virtue of the provisions of one or both said wills the title to the lot in fee simple vested in the said Rebecca, Sarah, Susannah, William, Robert and Joseph Patterson and their heirs, as tenants in common in equal proportions:

And further, should the said court be of the opinion that the Orphans' Court of Blair county had jurisdiction of proceedings of partition of the said lot, so as to vest the title in fee simple and absolutely in said lot in the plaintiff, by virtue of its decree of 18th of January, A. D. 1886, awarding him the same at the valuation and appraisement thereof:

Then the court shall enter judgment in favor of the plaintiff and against the defendant for the sum of fifty-eight hundred dollars; the plaintiff to perfect his recognizance in accordance with the decree of the court and file a deed to the defendant, properly executed, for the premises and lot of ground: otherwise, judgment to be entered for the defendant, either party to have the right to except and sue out a writ of error to the Supreme Court.

DEAN, P. J., entered judgment on the case stated in the sum of $5.800, filing the following opinion:

The first question in the case stated is, what estate in the land did Nancy Thompson, widow, take under the devise from her husband, Isaac Thompson? If a fee simple, then the devise to her brothers and sisters in her will vests an absolute estate in them; if only a life estate, they take nothing by her will.

The plaintiff claims that the rule in Shelley's case applies to the devise by Isaac Thompson to his widow: He directs

[Vowinckel v. Patterson.]

"that the small house on lot 31, corner of Allegheny and Montgomery streets, in the borough of Hollidaysburg, now being built, shall be finished as soon as possible, and that his wife Nancy shall enjoy the rents and profits of said lot and all the buildings thereon erected, during her natural life, and after her death the same shall go to her heirs absolutely." The limitation being to her and her heirs general without limitation, strictly brings the estate within the definition of an estate in fee; there is no devise over in default of heirs, thus leaving it a fee in Nancy Thompson. It was a devise for life to her, and then to descend to her heirs absolutely, which creates a fee, and a purchaser from her would be bound to accept a deed from her and pay the purchase money: Steiner v. Kolb, 7 P. F. Smith, 124; Quillman v. Custer, Id., 125.

This construction does no violence to the intention of the testator, as is obvious from the whole will. He provides fully for his collateral kindred, and directs that in case the buildings on the lot devised to his wife should be destroyed, then she has full power to sell and convey it, and can appropriate the proceeds to her own use.

We are of the opinion that Nancy Thompson took an estate in fee simple under the devise from her husband, and her will vested the title fully in her devisees.

The next question is, did the Orphans' Court have jurisdiction to partition this estate?

It is alleged in the argument that by the will of Nancy Thompson the course of descent under the intestate laws was changed, therefore the Common Pleas alone could partition it among the devisees.

We do not think the course of descent was changed by the will; all the devisees would have taken without a will, but not quite so much; two out of eight were excluded; the course of descent was not changed by this exclusion; she merely limited the number of the takers to less than would have enjoyed the estate under the intestate laws. In our understanding of the words of the Act, the course of descent would be changed only when a will gave the estate to strangers, or to those who would have taken nothing under the intestate laws; the course of descent is not changed when devisees under a will take more or less than they would have taken without a will.

Judgment is therefore entered for plaintiff for sum of $5,800; he to perfect his recognizance as already decreed, and file for use of defendant a proper deed for the land in question.

The defendant thereupon took this writ and filed the following assignments of error:

1. The Court erred in deciding that Nancy Thompson took

an estate in fee simple to the premises, under the will of her husband, Isaac Thompson. 2. The Court erred in deciding that a title in fee simple to the lot vested in the devisees of Nancy Thompson under her will. 3. The Court erred in deciding that the Orphans' Court had jurisdiction in proceedings in partition of the premises among the devisees of Nancy Thompson. 4. The Court erred in entering judgment in favor of plaintiff against defendant.

*Aug. S. Landis*, for plaintiff in error.—It was the intention of the testator that his wife should only enjoy a life estate; this is apparent from the words of the will. The testator's intentions must prevail, no matter how expressed: Chew's Appeal, 1 Wright, 23; Still *v.* Spear, 9 Wright, 168; Reck's Appeal, 28 P. F. S., 432.

The accidental employment of a technical word, not to describe the kind of estate, but only to designate individuals, the remaindermen after the extinction of the life estate, will not defeat the intention of the testator, and enlarge her life estate to a fee: Guthrie's Appeal, 1 Wright, 9; Chew's Appeal, Id., 23.

The jurisdiction of the Orphans' Court in partition is statutory. Under the Act of April 13th, 1840 P. L., 320.

"The jurisdiction of the several Orphans' Courts of this Commonwealth in the partition and valuation of the real estates of decedents shall extend to all cases of testacy, wherein the parties interested or any of them are minors, or the course of descent is not altered by the provisions of the last will and testament of the decedent."

Here the course of descent is altered. The Orphans' Court had therefore no jurisdiction.

*Ben. L. Hewit*, for defendant in error.—The terms of the devise in this case require the application of the rule in Shelley's case. Under it Nancy Thompson took an estate in fee in the house and lot: 3 Jarman on Wills, 99; 4 Kent, 23; Aumun *v.* Aumun, 9 Harris, 347; Porter's Appeal, 9 Wr., 201; Curtis *v.* Longstreth, 8 Wr., 302; Dodson *v.* Ball, 10 P. F. S., 500; Huber's Appeal, 30 P. F. S., 355; Angle *et al. v.* Brosius, 7 Wr., 189; Doebler's Appeal, 14 P. F. S., 9; Porter's Appeal, 9 Wr., 201; Eby's Appeal, 14 Wr., 311; Irwin's Appeal, 10 Out., 184; Dodge's Appeal, Id., 216, 220; Barnett's Appeal, 8 Id., 348; Quillman *v.* Curter, 8 P. F. S., 125; Haldeman *v.* Haldeman, 4 Wr., 29; Walker *v.* Vincent, 7 Harris, 369.

The Orphans' Court has jurisdiction in partition of the land devised by the testatrix.

The course of descent is not "altered" or interrupted. The

[Vowinckel v. Patterson.]

only difference is, (there being eight brothers and sisters) the quantity of estate is changed, limiting her devises to six instead of eight. As the Court expresses it, "merely limiting the number of takers to less than would have enjoyed the estate under the intestate laws."

Mr. Justice TRUNKEY delivered the opinion of the Court, October 4th, 1886.

Isaac Thompson devised the rents and profits of the land described in the case stated, to his wife during her life, and at her death to her heirs. The learned judge of the Common Pleas rightly decided that under the operation of the rule in Shelley's case, Nancy Thompson took an estate in fee simple.

The rule operates to give the ancestor an estate for life in the first instance, and by force of the devise to his heirs the inheritance also, by conferring the inheritance on him as the stock from which alone they can inherit: Hileman v. Bouslaugh, 13 Pa. St., 344.

Other clauses of the will fail to show an intent different form the meaning of the words of the devise. That the devisees might sell the land and use the proceeds in case of destruction of the building, is not enough to show the testator's intent to give a mere life estate to her, in absence of such destruction. It is obvious that one object of the testator in making a will was, to vest in her a larger estate than she could take under the intestate laws. He was childless. He made provision that in case a child should be born to them the will should be null and void. The contingency did not happen. Surely such a provision does not evidence that his words which pass a fee simple, were intended only to pass a life estate to his widow.

The next inquiry is, had the Orphans' Court jurisdiction of the proceeding in partition? The plaintiff contends that such jurisdiction was conferred by the Act of April 13th, 1840, P. L., 320, which includes all cases of testacy "where the course of descent is not altered by the provisions of the last will and testament of the decedent." It is not alleged that any other statute gives that court jurisdiction.

The testatrix had eight brothers and sisters and she devised the land to six. Under the intestate law each of the heirs would be entitled to one eighth of the land; under the will each devisee is entitled to one sixth. A few elementary principles dispose of the question. Purchase includes every other method of coming to an estate; but merely that by inheritance. If the ancestor devises his estate to his heir at law by will, with other limitations, or in any other shape than the course of descent would direct, such heir shall take by purchase.

[Vowinckel *v.* Patterson.]

But if a man, seized in fee, devises his whole estate to his heir at law, so that the heir takes neither a greater nor a less estate by the devise than he would have done without it, he shall be adjudged to take by descent. Even this rule, in England, was long ago abrogated by a statute which enacts that an heir to whom land is devised by his ancestor, shall take as devisee, and not by descent.

The principal difference, in effect between the acquisition of an estate by descent and by purchase, consists in two points: 1. By purchase the estate acquires a new inheritable quality, and is descendible to the owner's blood in general, and not the blood only of some particular ancestor; and 2. An estate taken by purchase will not make the heir answerable for the acts of the ancestor, as an estate by descent will. And the intestate law of Pennsylvania, which differs from the common law in many particulars, provides " that no person who is not of the blood of the ancestors or other relations from whom any real estate descended, or by whom it was given or devised to the intestate, shall in any of the cases before mentioned take any estate of inheritance therein."

It is impossible for the six children to take the whole of the estate except by virtue of the devise. Necessarily they hold the estate by purchase, and it acquires a new inheritable quality. The course of descent was broken, altered. Had the devise been made to strangers they would have taken as purchasers. The six heirs hold precisely in the same way, for their title is the will. And the effect on the legal course of descent is the same as if the devise were to strangers.

Soon after the enactment of April 13th, 1840, GIBSON, C. J., remarked of the provision relative to cases where the descent had not been altered, that it "was, perhaps, superfluous; for wherever exactly the same interest passes by the law that would pass by the will, the devisee takes by descent, and the testator may be said, in language strictly technical, to have died intestate as to the particular land:" Selfridge's Appeal, 9 W. & S., 55. In Waln's Appeal, 4 Pa. St., 502, the same justice spoke of this provision as unnecessary and amounting to nothing. These *dicta*, contemporaneous with the enactment of the statute, though not authority, show how quickly the great jurist saw that no devise could be made of an estate different from that which would descend to the heir, without altering the course of descent.

The judgment must be reversed for the reason that the Orphans' Court had no jurisdiction of the proceeding for partition.

> Judgment reversed, and now judgment is entered for the defendant.